# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| DECKERS OUTDOOR CORPORATION, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRENDS SNJ, INC.; and DOES 1-10, inclusive,<br><br>Defendants. | Civil Action No. |

## ORIGINAL COMPLAINT

Plaintiff Deckers Outdoor Corporation ("Deckers" or "Plaintiff"), through its undersigned counsel, hereby file this Original Complaint against Defendant Trends SNJ, Inc. ("Trends SNJ" or "Defendant") and DOES 1-10 (collectively "Defendants") requesting damages and injunctive relief, and upon personal knowledge as to their own acts and circumstances, and upon information and belief as to the acts and circumstances of others, alleges as follows:

## NATURE OF ACTION

1. This action arises out of Defendants' complicit and unlawful acts constituting trade dress infringement and unfair competition in violation of the Lanham Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act") and corresponding violations of the statutory and common law of the state of Texas.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the federal claims asserted in this action under 28 U.S.C. §§ 1331 and 1338(a) and supplemental

jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

3. This Court has personal jurisdiction over Defendant Trends SNJ, Inc. because Defendant is incorporated under the laws of the State of Texas with a principal place of business in Dallas County, Texas.

4. Venue is proper under 28 U.S.C. §§ 1391 because a substantial part of the events or omissions giving rise to the claims alleged occurred in this judicial district and because Defendants are subject to the Court's personal jurisdiction in this judicial district.

## THE PARTIES

5. Plaintiff Deckers Outdoor Corporation is a corporation organized and existing under the laws of the state of Delaware with an office and principal place of business located in Goleta, California. Deckers designs and markets footwear products under a number of well-known brands, including the Sanuk® products covered by the intellectual property asserted in this Complaint.

6. Upon information and belief, Defendant Trends SNJ, Inc. is a corporation duly organized and existing under the laws of the state of Texas with an office located at 168 Georgian Drive, Coppell, Texas 75019.

7. Deckers is informed and believes that, together with Trends SNJ, other individuals and entities currently named as DOES 1-10 may also be responsible in one manner or another for the wrongs alleged herein, in that at all relevant times, each one (including Trends SNJ) was the agent and servant of the others and acting within the course and scope of said agency and employment. These other individuals and entities are sued under fictitious names, DOES 1-10, because their true names and capacities are currently unknown to Deckers. Deckers will seek leave to amend this complaint when their true names and capacities are ascertained.

## DECKERS' SANUK® BRAND YOGA SLING SANDAL

8.  Deckers has been engaged in the design, distribution, marketing, offering for sale, and sale of footwear since 1975.  Deckers owns and markets its footwear products under several distinctive trademarked brands, including UGG®, Koolaburra®, Teva®, Sanuk®, and Hoka One One®.

9.  Sanuk® was founded in 1997 by Jeff Kelley, an entrepreneur and surfer who set out to build a backyard brand that was as much about funk as it was function, as hip as it was hippie and as humorous as it was heartfelt.  In July 2011, Deckers completed the acquisition of Sanuk®, which was then and still is one of the most beloved lifestyle footwear companies that began rooted in surf culture.

10. Today, the Sanuk® brand is embraced by a wide range of fun-loving consumers that includes surfers, outdoor enthusiasts, yogis and many others.  The Sanuk® brand is well-known for a variety of innovative first-of-its-kind footwear products, including its Sidewalk Surfer hybrid sandal-shoe and its Yoga Sling sandal, a sandal designed for ultra-comfort combined with a chic, unique sling design.

11. Since the Sanuk® Yoga Sling sandal was introduced in 2013, it has been marketed under a unique and distinctive appearance consisting of a combination of the following non-functional elements ("Yoga Sling Trade Dress"):

- Thong-type sandal with a generally flat sole;
- Foot bed is comprised of soft material;
- Sling strap formed by a loop of fabric extending from a toe post around the heel and back to the toe post;
- An instep strap extending from the lateral side of the sole across the instep to the medial side of the sole;
- The instep strap and the sling strap appear unconnected and the instep strap overlaps the sling strap;

- Both the sling strap and the instep strap are formed of a soft fabric having an exaggerated width; and
- Binding at the top of the toe post.

12. The Yoga Sling Trade Dress, which is a composite of the above-referenced features—an example of the overall appearance depicted below—is non-functional in its entirety, visually distinctive, and is unique in the footwear industry.



13. The design of the Yoga Sling Trade Dress is neither essential to the use or purpose nor does it affect the cost or quality of the Yoga Sling sandal. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Yoga Sling Trade Dress. The aforesaid combination of features of the Yoga Sling Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render Deckers' Yoga Sling sandal distinct and recognizable as goods originating from Deckers' Sanuk® brand.

14. Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the Sanuk® Yoga Sling sandal under the Yoga Sling Trade Dress, and as a result, sold millions of dollars of Sanuk® Yoga Sling sandals.

15. Deckers' Yoga Sling sandal is well-recognized and earned numerous

praises for its innovative design by the consuming public and those in the trade throughout the United States. For example, the Yoga Sling sandal was nominated in 2013 and 2014 as a SIMA "Footwear Product of the Year."

16. Due to its long use, extensive sales, and significant advertising and promotional activities by Deckers, the Yoga Sling Trade Dress has achieved a high degree of recognition, widespread acceptance, and secondary meaning among consumers, the public, and those in the trade throughout the United States as a symbol that identifies Deckers as the source of footwear products featuring said trade dress.

### DEFENDANTS' INFRINGING ACTIVITIES

17. Upon information and belief, Trends SNJ is in the business of developing, manufacturing, marketing, distributing, and selling apparel, including footwear. Trends SNJ markets and sells its products via various eCommerce channels, including eBay.com under the username "jeansnshoesmania".

18. This lawsuit arises from Defendants' design, manufacture, distribution, advertisement, marketing, offering for sale, and sale of certain footwear products, at least including but not limited to Trends SNJ's "Slingback" sandal (the "Accused Products"), which copy and infringe upon Deckers' Yoga Sling Trade Dress.

19. Upon information and belief, Trends SNJ's footwear, including the Accused Products, is offered for sale and sold via eCommerce channels such as online marketplace eBay.com.

20. Upon information and belief, Defendants designed, manufactured, advertised, marketed, distributed, offered for sale, and/or sold Accused Products, an exemplar of which is depicted (in comparison with Deckers' Sanuk® Yoga Sling sandal) in the photographs below:

 

**Deckers' Sanuk® "Yoga Sling" Sandal**  **Accused Trends SNJ "Slingback" Sandal**

21. Deckers has not granted Trends SNJ a license or any other form of permission to use any of its trademarks, design patents, trade dresses, or other intellectual property.

22. Trends SNJ is a competitor of Deckers, and upon information and belief, Defendants introduced the Accused Products into the stream of commerce in an effort to exploit the goodwill and reputation of Deckers' Sanuk® brand, and the immense popularity of the Sanuk® Yoga Sling sandal.

23. Upon information and belief, Trends SNJ had actual notice of Deckers' Yoga Sling Trade Dress before the filing of the present lawsuit yet continued to sell infringing products despite having been put on notice of Deckers' rights and that the Accused Products infringe upon the Yoga Sling Trade Dress.

24. Upon information and belief, Defendants have acted in bad faith and Defendants' unlawful acts have, and were intended to cause confusion, mistake, and/or deceive consumers as to the affiliation, connection, and association of the Accused Products with Deckers and the Sanuk® Yoga Sling sandal, and to misled and confuse consumers as to the origin, sponsorship, or approval of the Accused Products by Deckers.

## COUNT I
**(Trade Dress Infringement - 15 U.S.C. § 1125)**

25. Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

26. Since its introduction in 2013, Deckers has marketed Sanuk® Yoga Sling sandals under the Yoga Sling Trade Dress, comprised of a composite of the features set forth above, non-functional in its entirety and unique and inherently distinctive in the footwear industry and among consumers.

27. The design of the Yoga Sling Trade Dress is neither essential to the use or purpose nor does it affect the cost or quality of the Sanuk® Yoga Sling sandal. There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Yoga Sling Trade Dress. The aforesaid combination of features of the Yoga Sling Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render the Yoga Sling sandal distinct and recognizable as a product originating from Deckers' Sanuk® brand.

28. Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the Sanuk® Yoga Sling sandal under the Yoga Sling Trade Dress, and as a result, sold millions of dollars of the Sanuk® Yoga Sling sandals.

29. Deckers' Sanuk® Yoga Sling sandal is well-recognized throughout the United States and earned numerous praises for its innovative design by the consuming public and those in the trade. For example, the Sanuk® Yoga Sling sandal was nominated in 2013 and 2014 as a SIMA "Footwear Product of the Year."

30. Due to its long use, extensive sales, and the significant advertising and promotional activities by Deckers, the Yoga Sling Trade Dress has achieved a high degree of recognition, widespread acceptance, and secondary meaning among consumers and the public as a symbol identifying Deckers as the source of footwear

products featuring said trade dress.

31. The Accused Products produced, marketed, advertised, offered for sale and sold by Defendants bear confusingly similar reproductions of the Yoga Sling Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Deckers of the Accused Products.

32. Defendants' unauthorized use of the Yoga Sling Trade Dress is without Deckers' permission or authority and in total disregard of Deckers' intellectual property rights. Defendants' unauthorized use of the Yoga Sling Trade Dress in connection with the Accused Products infringes upon the Yoga Sling Trade Dress and constitutes false designation of origin and a false representation that the Accused Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Deckers.

33. Defendants' infringing acts were willful, deliberate, and intended to confuse the public and cause injury to Deckers and/or taken in reckless disregard of Deckers' rights, as there are numerous other designs in the footwear industry, none of which necessitate copying or imitating the Yoga Sling Trade Dress, and Trends SNJ had actual notice that the Accused Products would infringe the Yoga Sling Trade Dress.

34. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of its infringing acts.

35. Deckers is also entitled to an award of exemplary and punitive damages on account of Defendants' willful, deliberate, and/or intentional infringement in an amount sufficient to deter similar misconduct in the future.

36. Furthermore, unless Defendants' unlawful acts are enjoined by this

Court, there is no adequate remedy at law that can fully compensate Deckers for the harm caused by Defendants' infringement, which is ongoing. Accordingly, Deckers is entitled to injunctive relief prohibiting Defendants from continuing to infringe upon the Yoga Sling Trade Dress and the use of any designs confusingly similar thereto.

## COUNT II

**(Trade Dress Dilution Under Tex. Bus. & Com. Code § 16.103)**

37. Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

38. The Yoga Sling Trade Dress is non-functional.

39. The Yoga Sling Trade Dress is unique and distinctive as to the source of the Yoga Sling sandal and has acquired secondary meaning because consumers associate Deckers as the source of goods provided under the Yoga Sling Trade Dress.

40. Deckers has expended substantial time, resources, and effort in creating and developing Sanuk® footwear, including the Sanuk® Yoga Sling sandal, the embodiment of the Yoga Sling Trade Dress, which consumers recognize as a symbol of products solely originating from Deckers.

41. Through prominent, long, and continuous use in commerce, including commerce within the State of Texas, Deckers' Yoga Sling Trade Dress has become and continues to be famous and distinctive throughout the State of Texas and in geographic areas in Texas.

42. Defendants' use of Deckers' Yoga Sling Trade Dress began after Deckers' Yoga Sling Trade Dress became distinctive.

43. Defendants' use of Deckers' Yoga Sling Trade Dress without authorization from Deckers, is likely to dilute the distinctive quality of the Yoga Sling Trade Dress, to decrease the capacity of that mark to identify and distinguish

Deckers' products, and to cause harm to Deckers' business reputation.

44. Defendants' actions set forth above were intentional, willful, with bad faith, and with the intention of deceiving and misleading the public and causing harm to Deckers. Defendants' bad faith is evidence at least by the similarity of the Accused Products to Deckers' Yoga Sling Trade Dress, and by Defendants' continuing disregard for Deckers' intellectual property rights.

45. The aforesaid acts of Defendants constitute trade dress dilution in violation of the Texas Anti-Dilution Statute, Tex. Bus. & Com. Code § 16.103.

46. Unless enjoined by the Court, Defendants' acts will cause Deckers to suffer irreparable harm for which there is no adequate remedy at law.

47. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to all available relief provided for under the Tex. Bus. & Com. Code § 16.104, including injunctive relief, Defendants' profits, actual damages, enhanced profits and damages, and reasonable attorneys' fees.

## **COUNT III**

### **(Trade Dress Infringement Under Texas Common Law)**

48. Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

49. The Yoga Sling Trade Dress is non-functional.

50. The Yoga Sling Trade Dress is unique and distinctive as to the source of the Sanuk® Yoga Sling sandal and has acquired secondary meaning because consumers associate Deckers as the source of goods provided under the Yoga Sling Trade Dress.

51. Deckers has expended substantial time, resources, and effort in creating and developing Sanuk® footwear, including the Sanuk® Yoga Sling sandal, the embodiment of the Yoga Sling Trade Dress, which consumers recognize

as a symbol of products solely originating from Deckers.

52. Through prominent, long, and continuous use in commerce, including commerce within the State of Texas, Deckers' Yoga Sling Trade Dress has become and continues to be famous and distinctive throughout the State of Texas and in geographic areas in Texas.

53. Defendants' use of Deckers' Yoga Sling Trade Dress began after Deckers' Yoga Sling Trade Dress became distinctive.

54. Defendants' use in commerce of Deckers' Yoga Sling Trade Dress to advertise, market, promote, distribute, offer for sale, and/or sell Defendants' Accused Products without Deckers' consent is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendants are Deckers, or are licensees, authorized distributors, or affiliates of Deckers, or that Defendants, their activities, and/or their Accused Products are authorized, endorsed, sponsored, or approved by Deckers, or vice versa.

55. Defendants used, and presently use, Deckers' Yoga Sling Trade Dress in the State of Texas, without Deckers' authorization in furtherance of its willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill and recognition Deckers has established in the Yoga Sling Trade Dress.

56. Upon information and belief, Defendants made, and will continue to make, substantial profits and gain from their unauthorized use of Deckers' Yoga Sling Trade Dress to which they are not entitled in law or equity.

57. Defendants' actions set forth above were intentional, willful, with bad faith, and with the intention of deceiving and misleading the public and causing harm to Deckers. Defendants' bad faith is evidence at least by the similarity of the Accused Products to Deckers' Yoga Sling Trade Dress, and by Defendants' continuing disregard for Deckers' intellectual property rights.

58. The aforesaid acts of Defendants constitute trade dress dilution in

violation of the common law of the State of Texas.

59. Unless enjoined by the Court, Defendants' acts will cause Deckers to suffer irreparable harm for which there is no adequate remedy at law.

60. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial.

## COUNT IV

### (Unfair Competition Under Texas Common Law)

61. Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

62. Deckers' Yoga Sling Trade Dress is non-functional, and unique and distinctive as to the source of the Sanuk® Yoga Sling sandal and has acquired secondary meaning across the United States, and particularly in the State of Texas, because consumers associate Deckers as the source of goods provided under the Yoga Sling Trade Dress.

63. Deckers has expended substantial time, resources, and effort in creating and developing Sanuk® footwear, including the Sanuk® Yoga Sling sandal, the embodiment of the Yoga Sling Trade Dress, which consumers recognize as originating from Deckers.

64. Defendants' use of Deckers' Yoga Sling Trade Dress began after Deckers' Yoga Sling Trade Dress became distinctive.

65. Upon information and belief, Defendants introduced Accused Products into the stream of commerce in order to exploit the goodwill and reputation established in the Sanuk® Yoga Sling sandal for Defendants' own pecuniary gain. Defendants' unauthorized use of the Yoga Sling Trade Dress has allowed Defendants to unfairly benefit from said goodwill and reputation in unfair and unlawful competition with Deckers.

66. Defendants' use in commerce of Deckers' Yoga Sling Trade Dress to advertise, market, promote, distribute, offer for sale, and/or sell Defendants' Accused Products is likely to cause confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendants are Deckers, or are licensees, authorized distributors, or affiliates of Deckers, or that Defendants, their activities, and/or their Accused Products are authorized, endorsed, sponsored, or approved by Deckers, or vice versa.

67. Upon information and belief, Defendants' unlawful acts are willful, deliberate, and intended to cause confusion among the public and taken in reckless disregard of Deckers' rights. As such, an award of exemplary and punitive damages is necessary in an amount sufficient to deter similar misconduct in the future.

68. Defendants have made, and will continue to make, substantial profits and gain from their unauthorized use of Deckers' Yoga Sling Trade Dress to which they are not entitled in law or equity.

69. Defendants' misappropriation of Deckers' Yoga Sling Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Products to Deckers' Yoga Sling Trade Dress, and by Defendants' continuing disregard for Deckers' intellectual property rights.

70. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial.

## COUNT V
### (Misappropriation Under Texas Common Law)

71. Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

72. The Yoga Sling Trade Dress is non-functional, and unique and distinctive as to the source of the Sanuk® Yoga Sling sandal and has acquired

secondary meaning across the United States, and particularly in the State of Texas, because consumers associate Deckers as the source of goods provided under the Yoga Sling Trade Dress.

73. Deckers has expended substantial time, resources, and effort in creating and developing Sanuk® footwear, including the Sanuk® Yoga Sling sandal, the embodiment of the Yoga Sling Trade Dress, which consumers recognize as originating from Deckers.

74. Defendants' use of Deckers' Yoga Sling Trade Dress began after Deckers' Yoga Sling Trade Dress became distinctive and famous.

75. Defendants have wrongfully used Deckers' Yoga Sling Trade Dress in competition with Deckers and gained an unfair advantage, because Defendants were not burdened with the expenses incurred by Deckers.

76. Defendants have commercially damaged Deckers, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of the infringing products, by creating the false and misleading impression that the Accused Products are manufactured by, authorized by, or otherwise associated with Deckers, and by taking away sales that Deckers would have made.

77. Upon information and belief, Defendants' misappropriation of the Yoga Sling Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of the Accused Products to Deckers' Yoga Sling Trade Dress, and by Defendants' continuing disregard for Deckers' intellectual property rights.

78. Defendants' acts and conduct complained of herein constitute misappropriation in violation of the common law of the State of Texas and unless enjoined by this Court, the acts of Defendants complained of herein will cause Deckers to suffer irreparable harm for which there is no adequate remedy at law.

79. As a direct and proximate result of the foregoing acts, Deckers has

suffered and will continue to suffer significant injuries in an amount to be determined at trial.

## COUNT VI

### (Unjust Enrichment)

80. Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

81. The Yoga Sling Trade Dress is non-functional, and unique and distinctive as to the source of the Sanuk® Yoga Sling sandal and has acquired secondary meaning across the United States, and particularly in the State of Texas, because consumers associate Deckers as the source of goods provided under the Yoga Sling Trade Dress.

82. Deckers has expended substantial time, resources, and effort in creating and developing Sanuk® footwear, including the Sanuk® Yoga Sling sandal, the embodiment of the Yoga Sling Trade Dress, which consumers recognize as originating from Deckers.

83. Defendants' advertisement, promotion, offers for sale, sales, and/or distribution of the Accused Products, in direct competition with Deckers' Sanuk® Yoga Sling sandal, constitute unjust enrichment, at least because Defendants have wrongfully obtained benefits at Deckers' expense. Defendants have also, inter alia, operated with an undue advantage.

84. Defendants have wrongfully used and are wrongfully using Deckers' Yoga Sling Trade Dress in competition with Deckers and have gained and are gaining a wrongful benefit by undue advantage through such use. Defendants have not been burdened with the expenses incurred by Deckers, yet Defendants are obtaining the resulting benefits for its own business and products.

85. Defendants' unjust enrichment at Deckers' expense has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by

the similarity of the Accused Products to Deckers' Yoga Sling Trade Dress, and by Defendants' continuing disregard for Deckers' intellectual property rights.

86. Defendants' acts and conduct complained of herein constitute unjust enrichment and unless enjoined by this Court, the acts of Defendants complained of herein will cause Deckers to suffer irreparable harm for which there is no adequate remedy at law.

87. As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Deckers Outdoor Corporation respectfully prays for judgment against Defendants Trends SNJ, Inc. and DOES 1-10 as follows:

1. A judgment that Defendants infringed Deckers' Yoga Sling Trade Dress;

2. An order permanently enjoining and restraining Defendants, their agents, servants, employees, officers, associates, and all persons acting in concert with any of them from infringing Deckers' intellectual property at issue, including but not limited to infringing acts such as:

    a. manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products or any other products that bear an identical or confusingly similar design as Deckers' Yoga Sling Trade Dress;

    b. engaging in any other activity constituting unfair competition with Deckers, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements used or owned by or associated with Deckers; and

    c. committing any other act which falsely represents or which has the effect of falsely representing goods and services of Defendants are licensed, authorized, offered, produced, sponsored, or in any other way associated with Deckers;

  3. An order requiring Defendants to recall from any distributors and retailers and to deliver to Deckers for destruction any Accused Products, including the means of making such products;

  4. An order requiring Defendants to file with this Court and serve on Deckers within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth the manner in which Defendants complied with the injunction;

  5. An order for an accounting of all gains, profits and advantages derived by Defendants on account of the unlawful acts complained of herein pursuant to 15 U.S.C. § 1117(a), and any other applicable federal statute or Texas state and common law;

  6. An award of compensatory damages equal to Defendants' profits and all damages sustained by Deckers as a result of Defendants' wrongful acts;

  7. An award of damages equal to treble Defendants' profits or Deckers' damages, whichever is greater, on account of Defendants' willful infringement;

  8. An award of punitive damages and Deckers' costs, attorneys' fees, and interest as allowed under all applicable federal statutes and Texas state laws; and

  9. All other relief that the Court may deem just and proper.

Dated: May 26, 2021   **BLAKELY LAW GROUP**

By: /s/ Brent H. Blakely
_____
Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
**Blakely Law Group**
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

Attorneys for Plaintiff
Deckers Outdoor Corporation

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Deckers Outdoor Corporation hereby demands a trial by jury as to all claims in this litigation.

Dated: May 26, 2021     **BLAKELY LAW GROUP**

By: /s/ Brent H. Blakely
_____
Brent H. Blakely
bblakely@blakelylawgroup.com
**Blakely Law Group**
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

Attorneys for Plaintiff
Deckers Outdoor Corporation